# Null *et al. versus* Fries.

1. An absolute conveyance of land in consideration of a pre-existing indebtedness, due from the grantor, (dated prior to the Act of 1881,) may be shown to have been intended as a mortgage, if the debt survive.

2. If however, as in this case, the judgments and securities, which formed

[Null *v.* Fries.]

the consideration for the conveyances, are · satisfied and cancelled, the mere fact that the grantee executed articles of agreement giving the grantor an option to re-purchase the property within a certain time, will not constitute the transaction a mortgage.

3. It is for the court to say whether the particular parol evidence be sufficient to convert an absolute conveyance into an equitable mortgage. In order to have this effect, the parol evidence must be of the most clear and convincing character.

October 10th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Westmoreland county :* Of October and November Term 1885, No. 153.

Ejectment, by Jesse Fries against Joseph Null and Hester, his wife, William M. Null and W. J. Shawley to recover possession of a tract of land containing one hundred and ninety acres of land, situate in the township of East Huntingdon. Plea, Not guilty.

On the trial, before BLAIR, P. J., of the Fortieth Judicial District, it was agreed that a valid title to the land in dispute was vested in Joseph Null on March 1st, 1869.

Plaintiff claimed title from said Joseph Null by virtue of the following deeds : Deed from Joseph Null and wife to Samuel H. Null, William M. Null, Philip Null and F. M. Null, Jr., dated March 1st, 1869. Deed from Samuel H., William, and Philip Null, dated March 28th, 1871, releasing their interests to F. M. Null, Jr. Deed from F. M. Null, Jr. to plaintiff dated ·April 6th, 1875 and recorded October 5th, 1875, for the consideration of $11,691. At the time this deed was executed plaintiff signed a paper showing how the above consideration was made up; the following is a copy of the paper :

| " Judg't Bond for | $5000.00 | dated 9 Apl 1869 |
| "      "      " | 1000.00 | "    17 Mch 70 |
| Interest due Apl 1875 | 360.00 | on above |
| Judg't note | 487.45 | |
| "      note | 3744.26 | |
| Interest on all of above | 1059.17 | for one year |
| | 11650.88 | |
| Amt of error | 40.12 | |
| | 11691.00 | |

" I have this day purchased the farm of F. M. Null Jr. from him. The amount paid being as above stated eleven thousand six hundred & fifty dollars and eighty-eight cents, which was made up as above stated, although the consideration in the deed dated & delivered this day is mentioned as being : eleven

[Null v. Fries.]

thousand six hundred & ninety one dollars an error having been made of Forty & 12-100 dollars in writing the amount.

April 6th, 1875                                JESSE FRIES."

Attest:

W. H. KLINGENSMITH.

On the day the deed was made the plaintiff satisfied of record the judgments he held and surrendered all the evidence of indebtedness. Plaintiff further gave in evidence articles of agreement entered into on the same day, April 6th, 1875, whereby he agreed to give Null the privilege or option of buying back this property on or before the first day of January 1876, the said articles continued as follows: "The distinct understanding being that if the said party of the second part, fails to pay the consideration money herein mentioned, to wit the sum of Eleven thousand six hundred and Fifty & 88-100 dollars on or before the first day of January A. D. 1876, or in manner following to wit, One third of said sum on or before the 1st day of January, 1876, one third in one year, and one third in two years, with interest on the unpaid purchase money from the date of a delivery of a deed by the party of the first part in fee simple clear of all incumbrances, receivable sooner however, otherwise to be null and void.

"And it is further agreed between the parties, that the party of the second part who is now in possession of the premises, for and in consideration of one dollar paid to the party of the first part hath hereby leased the premises until first day of April 1876 at which time the premises are to be delivered to the party of the first part in the same good order that they now are," reasonable wear and tear and accidents happening by fire or otherwise excepted. The clause in this agreement in the nature of a lease not in any wise to interfere with any other provision or provisions in this article of agreement inserted and contained."

Under the above agreement Null went into possession of the land and testified that he gave notice that he would accept the option.

In December 1876, plaintiff, treating Null as a tenant, served notice on him to surrender the premises on April 1st, 1877. Null not having surrendered possession, plaintiff brought ejectment against him and secured a verdict and judgment in his favor, to be released on payment by Null of the sums mentioned in said articles. The said sums not having been paid, plaintiff brought the present action, claiming that the former verdict was conclusive.

Defendants offered in evidence a mortgage upon eighty-one acres of this land, given by F. M. Null to Hester Null, dated

[Null *v.* Fries.]

April 2d, 1875, recorded October 4th, 1875, and testified that he had given Fries notice of this mortgage before he took title, they also offered the record of a suit upon this mortgage and a sheriff's sale of the said eighty-one acres to Hester Null.

The defendants further showed a judgment obtained by William and Michael Null, against F. M. Null, a levy on the land in dispute, waiver of inquisition by F. M. Null, and sale on the *fi. fa.*, and sheriff's deed to William Null and Michael Null, dated 13th May, 1878, acknowledged 28th November, 1879. F. M. Null testified that the articles, accompanying the deed were "to give me the right to redeem the land and pay Fries his money, that is all he desired." In order to substantiate this, he offered in evidence a note from Fries of which the following is a copy. "F. M. Null—Dear Sir: I think I have a buyer for your farm; we will be there to see it on Monday or Tuesday of next week, 6th or 7th instant; be at home if you can. September 3rd, 1875."

On cross-examination, he admitted that after the conveyance to Fries, he brought an action against him to recover part of the sum which entered into the consideration of the deed as interest, on the ground that it was usurious: he also admitted that on the trial of that action the deed from himself to Fries was given in evidence as proof that he had sold the land to Fries and in that way had paid the usury. He further admitted that the judgments and evidences of debt, held by Fries, were satisfied and surrendered.

Shawley, one of the defendants, who was a tenant of the Nulls, testified that, in a conversation with Fries, the latter said, "I hold a deed for that property; I loaned him (Null) a sum of money, and he gave me the deed and the mortgage together."

Plaintiff, in rebuttal, denied that he had any knowledge of the mortgage to Hester Null, that the agreement of April 6th, 1875 was intended as a mortgage, and further denied any such conversation with Shawley.

Plaintiff presented, *inter alia*, the following points:—

"2. The paper writing of 6th April, 1875, signed by Fries and Null, gave Null the option to become thereafter a purchaser, and also gave him a lease of the property for one year. Such a paper does not constitute a defeasance, when the debt did not survive, and no loan made at the time." *Answer.* "We have instructed you in the general charge that the various instruments executed by the parties on the 6th of April, 1875, do not constitute a mortgage. The papers themselves, in connection with the attending circumstances and evidence in the case, are not sufficient to satisfy us that it was the pur-

[Null v. Fries.]

pose of the parties to create a mortgage." (Sixth assignment of error.)

"5. The action of ejectment, Jesse Fries v. F. M. Null, No. 529, May T., 1877, being for the same tract of land now in dispute, and the plaintiff having recovered a verdict for the land to be released upon condition of paying the moneys mentioned in the article of agreement of 6th April, 1875, and the defendant having failed to pay these moneys, the title became absolutely vested in the plaintiff, Jesse Fries." *Answer.* "The judgment in that case, in connection with the failure to pay the sums therein mentioned, could vest the title in the plaintiff as against F. M. Null, and all others claiming through him, under sales made upon liens or judgments entered since April 6th, 1875." (Seventh assignment of error.)

"8. The sheriff's sale on the judgment of William M. Null and Michael H. Null v. F. M. Null, to No. 522, May Term, 1877, vested no title in William M. and Michael H. Null as against Jesse Fries to 190 acres, more or less." *Answer.* "This point is affirmed." (Eighth assignment of error.)

Defendants presented, *inter alia*, the following points:

"2. If the jury believe that on the 6th day of April, 1875, Jesse Fries did not want the land described in his deed from F. M. Null of that date; that he only wanted his money then owing him by Null; and that he only intended to secure it by taking the deed, and then his executing, at the same time, articles of agreement to re-sell and convey to Null; such articles of agreement, whether they contained an option or not, are a defeasance of said deed, and, together with it, constitute a mortgage."

"3. That, if the deed and agreement of 6th April, 1875, constitute a mortgage, then, as the agreement was not recorded, it was no lien upon the land described in the deed, and the judgments of William and Michael Null v. F. M. Null being duly entered of record, were a lien; and a sale thereon by the sheriff, and his deed to them, conferred upon said William and Michael a good title, and the jury must find for the defendants." *Answer* to 2 and 3. "We do not think there is sufficient evidence in this case to justify us in submitting to the jury the question whether the deed can be treated as a mortgage." (Ninth assignment of error.)

The court charged the jury, *inter alia*, as follows: "We are disposed, upon the whole, although perhaps the question is not free from difficulty, to regard this transaction as a conveyance, or sale, between Fries and F. M. Null, and not a mortgage, and you will, therefore, treat it in that light. Being a sale, according to the instructions which we have given you,

then whether Jesse Fries would have the right to recover, as against Hester Null, the portion of the premises covered by the mortgage, would depend upon the question whether Fries, at the time of the purchase by him, had notice of the existence of the mortgage in favor of Mrs. Null. If he had he could not recover against her. If he had not, he would be entitled to recover. That is a question of fact for you to determine under the evidence."

Verdict for plaintiff for the land described in the writ, except so much thereof as was conveyed by the sheriff to Hester Null, and judgment thereon. Defendants then took this writ assigning for error the answers to the points, the action of the court in construing the transaction between Null and Fries to be an absolute sale, and in failing to submit the facts to the jury to determine whether the transaction was an absolute sale or a mortgage.

*Jacob Turney* ( *W. H. Klingensmith* with him), for plaintiffs in error.—The facts should have been left to the jury : Lehigh Coal & Nav. Co. *v.* Harlan, 3 Casey, 429 ; Pratt *v.* Campbell, 12 Harris, 184 ; Paxson's Appeal, 10 Out., 429.

A deed and a defeasance made at the same time constitute a mortgage : Friedley *v.* Hamilton, 17 S. & R., 70 ; Kerr *v.* Gilmore, 6 Watts, 405 ; Jaques *v.* Weeks, 7 Id., 261 ; Corpman *v.* Baccastow, 3 Nor., 363.

*H. P. Laird* (*J. A. Marchand* with him), for defendant in error.—The sale was absolute. Fries got immediate possession by the lease to Null, and all the securities for the debt were cancelled and surrendered : Todd *v.* Campbell, 8 Casey, 250. To constitute a mortgage, the debt must survive. And, if the alleged defeasance had rested in parol, still it was a question for the court : DeFrance *v.* DeFrance, 10 Casey, 385. Thus it is the province of the court to decide whether particular parol evidence be sufficient to convert an absolute conveyance into an equitable mortgage : Plumer *v.* Guthrie, 26 P. F. S., 441. If the evidence does not make a case on which a chancellor would decree a conveyance, it should not be submitted to a jury.

Mr. Justice GREEN delivered the opinion of the court November 2d, 1885.

It is entirely undisputed that the conveyance by F. M. Null, Jr., to Jesse Fries of the tract of 190 acres of land was made in consideration of an indebtedness the amount of which as agreed upon by the parties at the time was $11,650.88. All of this but $1,059.17 was evidenced by judgment bonds and

[Null v. Fries.]

notes upon which judgments had been entered. When the deed for the land was executed and delivered Fries surrendered his securities and satisfied all the judgments of record. Undoubtedly he did by this act extinguish the indebtedness due to him by Null. This being so, it must be conceded that the debt previously due by Null to Fries did not survive the delivery of the deed; no executions could have been issued upon the judgments, nor any writs of *scire facias* to revive them. In this vital respect therefore the case differs widely from all the ordinary cases where, although the deed was absolute it was subject to a defeasance by the grantor's subsequent payment to the grantee of the debt which formed the consideration of the deed. Of this class were the cases of Friedley v. Hamilton, 17 S. & R., 70; Jaques v. Weeks, 7 W., 261; Reitenbaugh v. Ludwick, 7 Cas., 131; Wilson v. Shoenberger, 7 Id., 295; Corpman v. Baccastow, 3 Nor., 363. In some of the cases the transaction was a present loan of money, to secure the repayment of which a deed was made by the borrower to the lender in fee simple, and the lender executed a contemporaneous agreement to re-convey upon payment back to him of the money and interest. In some similar cases this agreement to re-convey was in parol, but in all where the facts were of this character the transaction was pronounced a mortgage. Occasionally there has been some laxity of expression in stating the rule, predicating the conclusion of a mortgage upon two facts only, to-wit, the absolute deed and the simultaneous or shortly following, agreement of the grantee to re-sell to the grantor. Those two facts alone are not always sufficient to characterize the transaction, and this is illustrated in several cases.

Thus in Todd v. Campbell, 8 Cas., 250, we said, "It is true that if land be conveyed in consideration of a pre-existing debt due from the grantor to the grantee, and it is the understanding of the parties that the debt shall survive, the deed is but a mortgage. This understanding may be proved by parol. But the debt must survive. That the written evidences of it remain in the grantee's hands is not enough if the liability be gone." In the foregoing case although there was parol testimony tending to show an agreement to reconvey, the evidence that the debt survived was held insufficient, and this circumstance was fatal to the attempt to treat the transaction as a mortgage. In Spering's Appeal, 10 P. F. S., 199, there was a prior indebtedness, a written bill of sale of a number of securities, expressed to be in payment of the debt, for which they had been deposited as collateral security, and at the same time, another writing made by the vendees to the vendor agreeing to sell the same number of the same shares at any

time within sixty days for the same price named in the bill of sale. Yet we held the transaction must be regarded as a sale and not as a pledge, of the securities named. AGNEW, J., said, "But I know of no rule of law or equity, if there be no loan of money on security, and the true character and intention of the transaction is to make an absolute sale, which frustrates the intention of the parties."

In Allegheny R. R. & Coal Co. *v.* Casey, 29 P. F. S., 84, in a deed conveying large quantities of land in consideration of existing indebtedness due by the grantor to the grantee, a provision for a re-conveyance upon payment of the debt was contained, and yet it was held the transaction must be regarded as a sale and not as a mortgage. On p. 97 we said, "But there is no principle of law or equity which forbids a conveyance of land in satisfaction of a debt, and the fact that the nature of the subject requires various provisions to protect their mutual interests does not clash with this right."

"In the case of a deed absolute on its face, or where it is very doubtful, when the attempt is to convert it into a mortgage by extrinsic facts, it is evident that all the circumstances should be given their full weight, as well those in favor of the absolute character of the conveyance as those of its defeasance."

We are of opinion that the construction placed by the learned court below upon the two papers of 6th April, 1875, was correct, and that, so far as the papers are concerned, the transaction must be regarded as a sale and not as a mortgage. It was also claimed that the question of sale or mortgage should have been submitted to the jury, and the refusal to do so constitutes the substance of several assignments of error. If there were other facts in the case sufficient to control the conscience of a chancellor and require him to declare upon the whole of the testimony that the papers constituted a mortgage, this contention would be sustained. But it has long been the settled law of this Commonwealth that parol evidence in order to have this effect must be of the most clear and convincing character. In Plumer *v.* Guthrie, 26 P. F. S., 441, we said the evidence must be clear, explicit and unequivocal. In Burger *v.* Dankel, 4 Out., 113, the same language was repeated, and the present Chief Justice in delivering the opinion of the court, speaking of the facts and circumstances relied upon, said, they "must not be of doubtful import. It is not sufficient that they be merely consistent with the instrument being a mortgage, they must be clearly inconsistent with its being an absolute conveyance. Evidence less than this cannot establish a parol defeasance. Titles regular and legal on their face cannot be swept away by parol evidence of

doubtful facts or ambiguous inferences." It was further held that the judge must act as a chancellor and determine both the equity and the facts. We reversed the court below for submitting the facts to the jury, holding them to be uncertain and unsatisfactory in their character, and insufficient to defeat the deed. The same doctrine was held and applied with perhaps an increased rigor in Nicolls v. McDonald, 5 Out., 514. On p. 519 the present Chief Justice said, " If the parol evidence be insufficient to move a chancellor to decree a reconveyance it is insufficient to justify a recovery in ejectment. . . . . . It is in the discretion of a chancellor whether he will send an issue to the jury. When sent, their province is to aid him in ascertaining the facts; but their verdict is advisory only. It is not conclusive on him. He is still judge both of the equity and of the facts. . . . . . They must be proved to his satisfaction as well as to the satisfaction of the jury. If he be of opinion that the evidence does not make out a case which would induce a chancellor to decree a conveyance, it is his duty to give the jury binding instructions to that effect." In this case also, although the plaintiff swore positively that he refused to give a deed, and said he would give a mortgage, and that when he executed the deed he was told it would be for security only, and there was some other evidence indicative of a mortgage, the court below was reversed without a *venire* for submitting the whole case to the jury.

In the present case the facts outside of the papers of 6th April, 1875, are more consistent with the theory of an absolute sale than with the theory of a mortgage. Null, the grantor in the deed, testified that at the time of the conveyance all of the judgments held by Fries against him were satisfied of record. He also admitted that he subsequently brought an action against Fries to recover part of the sum which entered into the consideration of the deed, as interest, on the ground that it was usurious interest paid by him in the transaction. He also admitted that on the trial of that action this very deed was put in evidence on his behalf as proof that he had sold the land to Fries, and in that way had paid the usury. Null remained in possession of the land, but that was accounted for by his accepting a lease from Fries. The papers were all prepared by, and executed in the presence of, experienced counsel who knew perfectly well the difference between an absolute deed and a deed with a defeasance. No person testified to an understanding that there was to be a privilege of redemption but Null, and he was flatly contradicted by Fries. One witness testified to a subsequent admission by Fries, but it was of so feeble and uncertain a character as proof that the transaction was a mortgage, that even the positive contradic-

14 OUTERBRIDGE—34

tion given to it by Fries was unnecessary to destroy its efficiency to disturb the character of the deed. It was also in evidence that Fries had brought an ejectment against Null on the agreement of sale and recovered a conditional verdict, to be released by payment of the money, and that the defence that the paper was a mortgage was not made, or ever asserted until on the trial of the present case. A letter written by Fries to Null in September, 1875, was given in evidence in which Fries said "I think I have a buyer for your farm." But as this is language which any landlord might use in similar circumstances in writing to a tenant occupying a farm which he contemplated selling, it is manifest that no weight can be given to it as evidence divesting a title by deed.

A careful review of the testimony convinces us that it is utterly insufficient, in any possible aspect, to defeat the plaintiff's title under the deed of April 6th, 1875, and therefore the learned court below was entirely justified in withholding it from the jury.

Judgment affirmed.