# Canavan, Appellant, v. Paye.

*Equity—Findings of fact—Review—Appeals.*

In general, and particularly in cases where the correctness of a judge's findings of fact in an equity case depends upon the view to be taken of the direct testimony of witnesses which is in conflict, such findings will not be disturbed, except for error which clearly appears; and an apparent preponderance of testimony against them is not sufficient to lead to a reversal, if there is testimony which, if believed, will warrant them.

*Equity—Granting of an issue—Discretion.*

In an equity suit the granting of an issue is a matter of discretion with the chancellor. This course is only adopted to inform his conscience, and if he is not satisfied with the finding of the jury he may disregard it. Being solely for the benefit of the chancellor, if he can to his own satisfaction pass upon the evidence without the assistance of a jury trial, he may do so; for the right of trial by jury, considered as an absolute right, does not extend to cases of equity jurisdiction.

*Equity—Assignment of legacy—Collateral security—Finding of indebtedness—Jurisdiction of orphans' court.*

Where a bill in equity is filed for the cancellation of a note, a deed, and an assignment of a legacy, and the court upholds the note and the deed, and it is admitted that the assignment of the legacy was as collateral only, and was made absolute in form at the plaintiff's request, the court of equity in which the bill was filed may leave to the orphans' court the task of ascertaining the indebtedness for which the legacy was assigned, and a refusal to ascertain the indebtedness is not ground for reversal.

Argued Feb. 28, 1907. Appeal, No. 1, Jan. T., 1907, by plaintiff, from decree of C. P. Susquehanna Co., Jan. T., 1905, No. 152, on bill in equity in case of Mary J. Canavan v. James E. Paye, City National Bank of Susquehanna and C. W. Deakin. Before RICE, P. J., PORTER, HENDERSON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Bill in equity to cancel certain papers.

TERRY, P. J., specially presiding, filed an opinion containing findings of fact and conclusions of law as follows:

From the bill, answers and testimony taken in the case we find the following facts:

1. The plaintiff, Mrs. Mary J. Canavan, is a resident of New York city. The defendants, James E. Paye and C. W. Deakin, are residents of the borough of Susquehanna Depot, Susquehanna county, Pa. The other defendant is a national bank doing business in said borough.

2. On December 15, 1903, the plaintiff borrowed the sum of $750 from James E. Paye, for which she gave him her notes, among them one for $500. The next day Paye went with her to the defendant bank and there became surety for her on her note, given to the bank, for $288, on which she then received that amount of money from the bank.

3. On the morning of February 11, 1904, the plaintiff and Paye went to the said bank and it then discounted another note of the plaintiff for $500, dated January 8, 1904, which was indorsed and guaranteed by Paye, for which the plaintiff received from the bank her said note for $288 and the balance in cash. Said note for $500 (dated January 8, 1904), was subsequently entered to No. 154, April Term, 1904, in the court of common pleas of Susquehanna county, as a judgment in favor of James E. Paye, to the use of City National Bank of Susquehanna v. Mary J. Canavan. Later an exemplification thereof was entered in the court of common pleas of Lackawanna county, to No. 250, May Term, 1904. The bank, since the institution of this suit, assigned this debt to Paye, but it does not appear that such assignment was meant to prejudice the plaintiff or has had such effect. The debt is unpaid.

4. On or about February 10, 1904, the plaintiff gave to Mr. Paye a note for $560, it being a renewal of the aforesaid note for $500, dated December 15, 1903, with the interest thereon. Apparently the renewal note embraces some usury. It was entered by the defendant in the court of common pleas of Susquehanna county, to No. 59, April Term, 1904, and afterwards an exemplification of said judgment was entered in the court of common pleas of Lackawanna county, to No. 249, May Term, 1904. This debt remains unpaid.

5. On February 11, 1904, one or two hours after the discounting of the note dated January 8, 1904 (mentioned in finding of fact No. 3), the plaintiff, with full knowledge of what she was doing, executed and delivered to Paye an abso-

lute conveyance of the standing timber and bark upon her land, described in the bill, for the consideration of $500 which Paye then paid her by his check for that amount. Said check was used by the plaintiff to purchase a New York draft, on which she afterwards received the money.

6. Paye did not thereafter make any declarations to the plaintiff inconsistent with the nature of said deed as it purported to be, viz.: an absolute conveyance.

7. On February 18, 1904, Paye assigned his interest in said timber to the defendant Deakin for the sum of $675, who thereafter proceeded to cut and remove it, without any connivance with Paye. Said assignment was written upon the deed, and they were recorded together in the office of the recorder of deeds of Susquehanna county on April 29, 1904.

8. On March 23, 1904, the plaintiff also assigned to Paye her interest in a legacy bequeathed her by Bridget Canavan, late of Susquehanna county, Pa., deceased. Said assignment by its terms is absolute, but it was in fact made as collateral security for plaintiff's indebtedness to Paye, and he has never claimed it to be otherwise. · At the time it was drawn the plaintiff requested that it should not set forth the indebtedness it was intended to secure. It has been duly recorded in Susquehanna and Lackawanna counties.

9. It does not appear that Paye instituted proceedings to collect said legacy. Some records of the orphans' court of Susquehanna county pertaining thereto were offered in evidence, but they were not produced and have not been shown to us. The testimony indicates that some such steps were taken, but not by Paye.

10. The record and files in Nos. 59 and 154, April Term, 1904, in the court of common pleas of Susquehanna county, were offered in evidence, but with the exception of the petition of the plaintiff here, defendant in said judgments, were not produced. By that petition and indorsement it appears that an execution issued on No. 59, April Term, 1904 (by virtue of which plaintiff's real estate was levied upon) was stayed by the court pending the disposition of this case.

11. The evidence discloses no fraud perpetrated or intended by any of the defendants, as alleged in the bill, or which will justify the granting of the prayers of said bill.

OPINION.

The request for an issue is refused. There is nothing in the nature of the case demanding a trial by jury and as a verdict would be only advisory we are of opinion that such procedure is not warranted by anything made to appear before us.

The plaintiff's requests for findings of fact and of law are answered by us in immediate connection therewith and are appended hereto.

The disposition of this case depends upon the determination of the facts in dispute. Having found them in favor of the defendants, it follows that the plaintiff is not entitled to the relief prayed for in her bill.

It is evident that the Act of June 8, 1881, P. L. 84, would preclude her from showing the deed for the timber to be a mortgage, unless she could make it clearly appear that it was surreptitiously substituted, when executed by her, for one in which was set forth its collateral or defeasible nature. In this, as we have found, she failed, and consequently the deed in evidence must be given its legal effect.

We have also found that the two judgments, Nos. 59 and 154, April Term, 1904, are valid, subsisting obligations.

These conclusions are based upon the decided weight of the evidence, which should not and cannot be ignored; and this preponderance of testimony completely refutes her contentions. The burden of the complaint of the plaintiff is that the defendant Paye conceived and was carrying out a general scheme to defraud her. We have been unable, from the evidence before us, to detect such intent. The testimony discloses a series of transactions between the plaintiff and Paye, resulting in her indebtedness to him. It is manifest to us that the judgments mentioned represent money obtained from him, or by his assistance, and which is now justly owing to him by her. It may be that he was prudent to a remarkable degree in insisting upon and receiving the security furnished, but that does not convict him of fraud. If the plaintiff had, as we have found she did, legal consideration for said obligations, it is not a ground of complaint in a court of equity, or elsewhere, that he induced her to amply secure him.

It was stated by plaintiff's counsel, on the argument of the case, that if it should be determined that the judgments and

deed for the timber were valid the prayer for an account—to ascertain the amount, if any, due the defendant Paye for indebtedness in addition to the judgments—would not be pressed. This would involve an ascertainment of such indebtedness, for which Paye claims the legacy was assigned, in part, as collateral. It seems to us that this is a matter cognizable in the orphans' court when distribution of the estate of Bridget Canavan is made. Doubtless this was the view entertained by plaintiff's counsel when the statement just attended to was made.

We have found that the assignment of the legacy was made as collateral security for plaintiff's indebtedness to Paye. It must stand as such until the indebtedness is determined and paid. We think, however, in view of the fact that said assignment is absolute in terms, although concededly meant to be collateral, that Paye should so designate it. The plaintiff is entitled to have it appear on the record in accordance with the truth of the matter. It may be a question whether it could not be transferred by Paye to an innocent assignee, to the prejudice of the plaintiff. Therefore we will require him to put upon the record of said assignment, in the proper offices in Susquehanna and Lackawanna counties, a declaration that he holds said assignment as, and only as, collateral security for an existing indebtedness of the plaintiff to him. This will afford ample protection to her, without injury to him.

Another matter remains for comment. In the fourth finding of fact we have stated that apparently the $560 note, entered to No. 59, April Term, 1904, embraced some usury. This is not specifically alleged in the bill and, in our opinion, relief on that ground should not be granted in this proceeding. The plaintiff has her remedy, however, in the court in which such judgment is entered and the disposition of this case is not meant to be an adjudication of that matter. If the defendant Paye does not voluntarily reduce the judgment by receipting the amount of the usury included in it, the decree entered here will be without prejudice to her right to make defense against the judgment to the extent of the usury it embraces.

## CONCLUSION OF LAW.

The preliminary injunction should be dissolved and the plaintiff's bill dismissed upon the placing of record by the defend-

96      CANAVAN, Appellant, v. PAYE.

Opinion of Court below—Opinion of the Court. [34 Pa. Superior Ct.

ant Paye of his declaration that he holds the assignment of the legacy mentioned in the bill as collateral security for indebtedness of the plaintiff to him—as indicated in the foregoing opinion.

Upon Paye's compliance with the foregoing condition we will make a decree to be drawn and submitted by counsel, dissolving the injunction and dismissing the bill at the costs of the plaintiff.

*Errors assigned* among others were as to certain findings of fact, refusal of an issue, and refusal to grant a reargument.

*A. B. Smith*, of *McCollum & Smith*, with him *T. A. Doherty*, for appellant.

*Wm. D. B. Ainey*, with him *J. D. Miller*, for appellees.

OPINION BY RICE, P. J., October 7, 1907:

The learned trial judge has accurately and concisely epitomized the averments of the pleadings and the conflicting evidence in support of them and set forth his findings of fact and conclusions of law with clearness and precision. No useful purpose would be served by a restatement of the transactions out of which the controversy between the parties arose, and we shall not attempt it. Equity rule 67 provides that upon appeal in such a case as this such matters only shall be assignable for error as have been excepted to and finally passed upon by the court as prescribed in the preceding rules governing the trial of cases in equity. Therefore, our discussion of the assignments of error will be confined to the seven exceptions to the judge's findings of fact, the exception to the refusal of the plaintiff's application for an issue, and the exception to the refusal to grant a reargument.

The findings of fact excepted to are not mere deductions from other facts, but are based almost wholly upon direct testimony which is not inherently improbable and was given by witnesses who were not more deeply interested in the result than those who testified to the contrary. Even though the burden of proof as to some of the matters in dispute was on the defendants, it cannot be declared from an examination and analysis of the evidence sent up with the record that it does not preponderate in their favor. It is not a case where findings are based

on slight testimony which was opposed by testimony so overwhelming that the court, in the exercise of a sound discretion, would have been bound to set aside the verdict if it had been tried before a jury.  By no ingenuity of argument can the conclusion be avoided that, in order to reverse the judge's findings of fact, we must hold that he erred in not crediting the testimony of the plaintiff and her witnesses rather than that of the defendant Paye and the other witnesses called by the defendants.  The rules that are to guide an appellate court in the determination of such a case are well settled.  Prior to the amendments to the equity rules adopted by the Supreme Court in 1894, it was held that the findings of a master on questions of fact, approved by the court below, would not be set aside in the Supreme Court, except for clear error, even when the testimony was conflicting and the preponderance thereof might appear to be contrary to the master's conclusion : Stocker v. Hutter, 134 Pa. 19 ; Brotherton v. Reynolds, 164 Pa. 134.  This was where the credibility of witnesses was involved.  But, as was pointed out in Phillips's Appeal, 68 Pa. 130, the same weight was not attached to a master's finding of fact where it was a mere deduction from other facts reported by him and was simply the result of reasoning.  It would seem that the same distinction should be recognized when speaking of the review of a judge's findings of fact in a case tried before him under the equity rules.  But in general, and particularly in cases where the correctness of the findings depends upon the view to be taken of the direct testimony of witnesses which is in conflict, it has been uniformly held that they will not be disturbed except for error which clearly appears, and that an apparent preponderance of testimony against them is not sufficient to lead to a reversal if there is testimony which, if believed, will warrant them : Stockett v. Ryan, 176 Pa. 71 ; Commonwealth ex rel. v. Stevens, 178 Pa. 543 ; Hancock v. Melloy, 187 Pa. 371 ; Steinmeyer v. Siebert, 190 Pa. 471 ; Dilworth v. Kennedy, 201 Pa. 388 ; Lyons v. Lyons, 207 Pa. 13 ; Byers v. Byers, 208 Pa. 23 ; Mackintyre v. Jones, 9 Pa. Superior Ct. 543 ; Bannon v. Lincoln National Bank, 14 Pa. Superior Ct. 566 ; Hunter v. Bilheimer, 22 Pa. Superior Ct. 622 ; Obney v. Obney, 26 Pa. Superior Ct. 116.  In the last cited decision of the Supreme Court, Mr. Justice MESTREZAT said, that " clear and plain

error must be pointed out. It is not sufficient that our conclusion would be different on the testimony brought up on the record. If the finding is warranted by evidence and is not clearly erroneous, we will not disturb it. Here the credibility of the witnesses is of more than usual importance in ascertaining the facts and, for obvious reasons, the trial judge was in a better position to determine it than we are." This rule does not permit a perfunctory consideration of the evidence relative to facts in dispute and is in entire harmony with the doctrine enunciated by Justice TRUNKEY in Worrall's Appeal, 110 Pa. 349; but it does attach great weight, and properly so, to the superior opportunity which the trial judge has to judge of the credibility of the witnesses. While he did not in this case hear all of the witnesses, yet the plaintiff, the defendant Paye, and some of the other witnesses testified before him, and, therefore, the case comes within the reason of the rule. In the foregoing remarks we are not to be understood as intimating that the testimony seems to us to preponderate against the judge's findings. On the contrary, so far as we can judge, without having seen or heard the witnesses, it seems to us to preponderate in their favor.

The granting of an issue in an equity suit is a matter of discretion with the chancellor. This course is only adopted to inform his conscience, and if he is not satisfied with the finding of the jury he may disregard it: Equity Rule 72; Baker v. Williamson, 2 Pa. 116; Baker v. Williamson, 4 Pa. 456; Scheetz's Appeal, 35 Pa. 88; Nicolls v. McDonald, 101 Pa. 514; Null v. Fries, 110 Pa. 521. Being solely for the benefit of the chancellor, if he can to his own satisfaction pass upon the evidence without the assistance of a jury trial, he may do so; for the right of trial by jury, considered as an absolute right, does not extend to cases of equity jurisdiction: Bispham's Equity, sec. 9. Here the application was made after the testimony was concluded. The trial judge evidently entertained a strong conviction as to the way the questions of fact ought to be decided and of his ability to decide them correctly without the aid of a jury. Under the circumstances, it cannot be declared that he did not exercise a sound discretion in accepting the responsibility which the law cast upon him instead of dividing it with a jury. The cases cited by appellant's counsel aris-

ing from applications to open judgments, while in many respects resembling suits in equity, are not entirely governed by the same principles; and the same considerations, which in some instances have led to reversal of orders refusing to open the judgments and to submit the cases to a jury, do not control in suits in equity tried in court in accordance with the equity rules. We see no ground for overturning the action of the court in this particular and putting the parties to the expense and delay which would be incident to a trial by jury.

In the motion for reargument it was claimed that it was the duty of the court to ascertain the amount and character of indebtedness, if any, other than the two judgments, against the plaintiff, and the various items thereof, for which the assignment of legacy was held by Paye as collateral. With regard to the question raised by the exception to the judge's disposition of this motion, it should be stated (1) that Paye explicitly admitted in his answer that the assignment of legacy was, although apparently absolute, simply taken and held as collateral for the plaintiff's indebtedness to him; (2) that one of the findings of fact that has been sustained is that it was so drawn at the plaintiff's request. Moreover, the learned judge says in his opinion : "It was stated by plaintiff's counsel, on the argument of the case, that if it should be determined that the judgments and deed for the timber were valid the prayer for an account—to ascertain the amount, if any, due the defendant Paye for indebtedness in addition to the judgments—would not be pressed. This would involve an ascertainment of such indebtedness, for which Paye claims the legacy was assigned, in part, as collateral. It seems to us that this is a matter cognizable in the orphans' court when distribution of the estate of Bridget Canavan is made." We do not find that this statement of the learned judge is controverted by the appellant's counsel, and in view thereof, as well as of the adequate jurisdiction of the orphans' court, we cannot say that there was error in the matter complained of.

Upon the whole case we conclude that the findings of fact were warranted by the evidence and that the conclusions of law logically follow therefrom.

All of the assignments of error are overruled, and the decree is affirmed at the costs of the appellant.